UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                                               :

MICHELE A. BROWNE,                              05 Civ. 4270 (RB)
                                                               :          (ECF CASE)

                Plaintiff,

                                                          :          <u>COMPLAINT</u>

       - against -

                                                            :

J.P. MORGAN SECURITIES, INC.,          PLAINTIFF DEMANDS
                                                           :          <u>TRIAL BY JURY</u>

                Defendant.
----------------------------------------------------------------x

       Plaintiff, Michele A. Browne, by her attorneys, Liddle & Robinson, L.L.P., for her Complaint against J.P. Morgan Securities, Inc. ("JPM") allege the following:

## THE PARTIES

       1.     Plaintiff Michele A. Browne is an African-American female.  Ms. Browne was hired by Defendant J.P. Morgan Securities, Inc. ("JPM") in or around May 2000 as Vice President of Institutional Equity Sales.  Ms. Browne maintained this position until her employment was terminated on May 2, 2003.

       2.     Upon information and belief, JPM has an office at 270 Park Avenue, New York, New York 10017 where Plaintiff worked.  Defendant's principal place of business is in the State of New York.

## THE NATURE OF THE ACTION

3. This is a civil action for damages and remedies brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq. ("Title VII"); the Fair Labor Standards Act of 1938 § 6(d), as amended, 29 U.S.C. § 206(d) ("Equal Pay Act"); the New York State Executive Law § 296 et seq. ("New York State Human Rights Law"); the New York State Executive Law §194(1) ("New York State Equal Pay Law"); and the Administrative Code of the City of New York § 8-101 et seq. ("New York City Human Rights Law").

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and the principles of supplement jurisdiction under 28 U.S.C. § 1367.

5. Ms. Browne filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 29, 2004.

6. Ms. Browne received a Notice of Right to Sue letter from the EEOC on March 30, 2005.

7. Plaintiff served copies of this Complaint upon the New York City Commission on Human Rights and the New York City Corporation Counsel before filing this complaint in the United States District Court.

8. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in the Southern District of New York.

FACTS

9.      Ms. Browne joined JPM in May 2000 as Vice President of Institutional Equity Sales and was responsible for selling U.S. equity research products to mutual funds and investment management companies in the New York area.

10.     While employed by JPM, Ms. Browne was qualified for her position and performed her duties in a professional and competent manner.  She graduated from Brown University in 1989 and earned a Master's of Business Administration degree from Harvard Business School in 1993, and was employed by Salomon Smith Barney as an institutional equity salesperson from June 1994 until May 2000.

11.     Ms. Browne had covered Alliance Capital Management ("Alliance"), the largest account at JPM, at Salomon Smith Barney as well, and was hired by JPM Morgan largely to cover Alliance.

12.     Ms. Browne was specifically responsible for covering the following institutional investor accounts at JPM:  Alliance, J&W Seligman, Jennison Associates, Pimco Equity Advisors, and JP Morgan Investment Management.

13.     In 2002, Ms. Browne became pregnant and announced to JPM that she was pregnant, and on July 2, 2003 she gave birth and took maternity leave until approximately October 1, 2003.

14.     In January 2004, Tom Schmitt, who had previously been the Head of the Product Marketing Group, became the Head of New York Institutional Sales and Ms. Browne's direct supervisor.

3

15. On information and belief, Mr. Schmitt has never hired an African-American in a senior role.

16. In January 2004, during Ms. Browne's first meeting with Mr. Schmitt, he reviewed the votes she had received from various clients in their ranking of institutional equity sales coverage at the various securities firms. Mr. Schmitt immediately criticized her for the decline in the vote from J&W Seligman from 8th among securities firms in sales coverage in the second quarter of 2003 to 15th in the third quarter of 2003. Mr. Schmitt blamed Ms. Browne even though he knew that the third quarter of 2003 was when she was on maternity leave and another employee, David Frame, had covered J&W Seligman in her absence, and even though she informed Mr. Schmitt that J&W Seligman had indicated to her that Mr. Frame had ignored people at J&W Seligman for whom she was responsible. One of the people at J&W Seligman that Ms. Browne covered had complained to management at JPM about Mr. Frame.

17. In February 2004, Mr. Schmitt met with Ms. Browne and the other JPM salespeople who covered Alliance. Mr. Schmitt said that he felt that the vote from Alliance for the New York area was the biggest problem in the Alliance votes, and made clear that he felt that this was her fault. As Ms. Browne pointed out to Mr. Schmitt, however, the decline in votes from Alliance was regarding the coverage of Michael Fitzgibbons, who had quit JPM in January 2004 but who had covered parts of Alliance in the New York area. Mr. Fitzgibbons had fallen in the vote from the Alliance technology team from 9th to 19th for the second half of 2003.

18. In the second half of 2003, Ms. Browne received more individual votes from Alliance than any other of the JPM salespeople. She also did better in her portfolio rankings in the second half of 2003 than any of the other salespeople who covered the New York-based Alliance teams, even though she was out on maternity leave for three months. Ms. Browne's votes from

4

Alliance for the second half of 2003 were approximately 9th in value (up from 10th for the first half of 2003), 4th in small cap (down from 3rd), 10th in growth (up from 12th), and 6th in research (down only one spot from 5th).  The votes for the other New York-based JPM salespeople from Alliance were all in the teens for the second half of 2003.

19.     On May 2, 2004, JPM terminated her employment, purportedly because it was eliminating her position.

20.     Mr. Schmitt never spoke with Ms. Browne's clients about her performance prior to terminating her employment.

21.     Ms. Browne's clients were shocked and upset that her employment was terminated.

22.     Despite JPM's claim that it was eliminating Ms. Browne's position, since Ms. Browne's termination, JPM has hired at least one new Caucasian male Institutional Equity salesperson.

23.     After Ms. Browne's termination, her accounts were reassigned to Caucasian salespeople, and her largest account, Alliance, was reassigned primarily to Caucasian males Steven Quinn and Michael Coyle, who Ms. Browne had introduced to the New York Alliance team based on her long relationship having covered Alliance in the New York region at Salomon Smith Barney and JPM.  J&W Seligman and Pimco were reassigned primarily to David Frame, a Caucasian male.

24.     On information and belief, of approximately 25 institutional salespeople in New York in the beginning of 2004, there was only one other African-American, who was relatively junior.  There were only 7 other women.

5

25. In 2000, Ms. Browne's total salary and bonus (hereinafter "total compensation"), was $1.1 million. This exceeded her contractually guaranteed amount due to her outstanding performance.

26. In 2001, Ms. Browne's total compensation was $675,000.

27. In 2002, Ms. Browne's total compensation was $375,000. At or around this time, JPM knew that Ms. Browne was pregnant.

28. In 2003, Ms. Browne's total compensation was $375,000. At or around this time, Ms. Browne was pregnant and gave birth.

29. Upon information and belief, JPM did not pay Ms. Browne amounts commensurate to similarly situated male salespeople and similarly situated female salespeople who were not pregnant for 2001, 2002, and 2003.

FIRST CAUSE OF ACTION

(Sex Discrimination Under Title VII)

30. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 29 as if separately set forth herein.

31. At all relevant times, Plaintiff was an "employee" of Defendant under Title VII, 42 U.S.C. § 2000(e)(f).

32. Upon information and belief, Defendant is an "employer" under Title VII, 42 U.S.C. § 2000(e)(b).

33. Defendant discriminated against Plaintiff because of her sex in violation of Title VII, 42 U.S.C. § 2000e-2(a), by the conduct described in this complaint, including (a) in her amount of compensation, and (b) terminating her employment.

34. As a result of Defendant's discrimination, Plaintiff suffered substantial damages, including lost wages and benefits and emotional distress, and attorneys' fees, in an amount to be determined at trial.

35. Upon information and belief, Defendant engaged in its discriminatory conduct with malice and/or reckless indifference to Plaintiff's federally protected rights. Plaintiff is therefore entitled to punitive damages under Title VII.

## SECOND CAUSE OF ACTION

(Sex Discrimination Arising Under the Federal Equal Pay Act)

36. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 35 as if separately set forth herein.

37. At all relevant times Plaintiff was an "employee" of Defendant for purposes of § 203(e) of The Fair Labor Standards Act.

38. Upon information and belief, Defendant is an "employer" for purposes of § 203(d) of the Fair Labor Standards Act.

39. Upon information and belief, Defendant discriminated against Plaintiff because of her sex in violation of § 296 of The Equal Pay Act by paying Plaintiff a lower compensation than males in substantially similar positions.

40. As a result of Defendant's discrimination, Plaintiff suffered substantial damages, including lost wages and benefits, liquidated damages and attorneys' fees, in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

(Sex Discrimination Under the New York State Human Rights Law)

41. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 40 as if separately set forth herein.

42. At all relevant times, Plaintiff was an "employee" of Defendant for purposes of §§ 292 and 296 of the New York State Human Rights Law.

43. Upon information and belief, Defendant is an "employer" for purposes of §§ 292 and 296 of the New York State Human Rights Law.

44. Defendant discriminated against Plaintiff because of her sex in violation of § 296 of the New York State Human Rights Law by the conduct described in this complaint, including (a) in her amount of compensation, and (b) terminating her employment.

45. As a result of the discrimination described above, Plaintiff has suffered substantial damages, including but not limited to lost wages and benefits and emotional distress, and attorneys' fees, in an amount to be determined at trial.

FOURTH CAUSE OF ACTION

(Sex Discrimination Arising Under the New York State Equal Pay Law)

46. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 45 as if separately set forth herein.

47. At all relevant times, Plaintiff was an "employee" of Defendant for purposes of the New York State Equal Pay Law under the New York Labor Law §§ 190(2) and 194.

48. Upon information and belief, Defendant is an "employer" for purposes of the New York State Equal Pay Law under New York Labor Law §§ 190(3) and 194.

49. Defendant discriminated against Plaintiff because of her sex in violation of § 194 of the New York State Equal Pay Law by paying Plaintiff lower compensation than males in substantially similar positions.

50. As a result of Defendant's discrimination, Plaintiff has suffered substantial damages, including, but not limited to, lost wages and benefits, and attorneys' fees, in an amount to be determined at trial.

51. Upon information and belief, Defendant's discriminatory actions against Plaintiff were willful and in bad faith. Plaintiff is therefore entitled to liquidated damages under the New York State Equal Pay Law.

FIFTH CAUSE OF ACTION

(Sex Discrimination Under the New York City Human Rights Law)

52. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 51 as if separately set forth herein.

53. Plaintiff is a "person" under § 8-102(1) of the New York City Human Rights Law.

54. Upon information and belief, Defendant is an "employer" subject to the provisions of the New York City Human Rights Law under § 8-102(5) of the Administrative Code.

55. Defendant discriminated against Plaintiff because of her gender in violation of § 8-107 of the New York City Human Rights Law, by the conduct described in this complaint, including (a) in her amount of compensation, and (b) terminating her employment.

56. As a result of Defendant's discrimination, Plaintiff has suffered substantial damages, including, but not limited to, lost wages and benefits and emotional distress, and attorneys' fees, in an amount to be determined at trial.

57. Upon information and belief, Defendant's discriminatory actions against Plaintiff were taken with reckless indifference to Plaintiff's rights, entitling her to punitive damages under New York City Human Rights Law.

WHEREFORE, while reserving the right to seek additional damages as available, Plaintiff demands judgment against Defendant as follows:

A. On the First Cause of Action, back pay and benefits and front pay and benefits, plus compensatory and punitive damages, attorneys' fees, costs and interests, all in amounts to be determined at trial;

B. On the Second Cause of Action, back pay and benefits and front pay and benefits, plus compensatory and liquidated damages, attorneys' fees, costs and interests, all in amounts to be determined at trial;

C. On the Third Cause of Action, back pay and benefits and front pay and benefits, plus compensatory damages, costs and interest, all in amounts to be determined at trial;

D. On the Fourth Cause of Action, back pay and benefits and front pay and benefits, compensatory damages and liquidated damages, attorneys' fees, interest and costs, all in amounts to be determined at trial;

E. On the Fifth Cause of Action, back pay and benefits and front pay and benefits, plus compensatory and punitive damages, attorneys' fees, costs and interest, all in amounts to be determined at trial;

11

 F. Such other and further relief as this Court deems just and proper.


Dated: New York, New York
    April 29, 2005

                LIDDLE & ROBINSON, L.L.P.


                S/_____
                  Michael E. Grenert (MG 2021)
                Attorneys for Plaintiff
                800 Third Avenue
                New York, New York 10022
                (212) 687-8500